SADIE BINGHAM GRINNAN, TRUSTEE, *v.* SOUTHERN RAILWAY
COMPANY.

(Filed 21 October, 1953.)

1. **Railroads § 7—Evidence held insufficient to show that fire adjacent to right of way resulted from act of defendant.**

Plaintiff's evidence tended to show that when her caretaker reached the scene woods on a hill adjacent to the right of way were burning and that fire was still burning at a fusee upon defendant's tracks. Plaintiff also

offered evidence tending to show that employees of defendant customarily put out fusees at or near the place in question whenever trains stopped there, as signals to operators of other trains. *Held:* In the absence of evidence that defendant's employees put out a fusee within the burned area at or near the time the fire was discovered or that a train of defendant stopped there at any time on the morning prior to the fire, defendant's motion to nonsuit plaintiff's action to recover the damages to her lands from the fire was properly sustained.

**2. Same—**

In an action against a railroad company to recover for damages to plaintiff's lands from a fire, plaintiff must show by reasonably affirmative evidence that the fire started on a foul right of way by act of defendant, and that the fire spread to plaintiff's lands.

APPEAL by plaintiff from *Sink, J.,* July Term, 1953, BUNCOMBE. Affirmed.

Civil action in tort to recover compensation for damage to real property caused by fire.

Plaintiff, as trustee of an active trust, owns a large tract of land adjoining the city limits of Asheville, north of the railroad bridge across the French Broad River, adjacent to the western boundary of defendant's right of way and known as the Bingham School property.

The defendant operates trains over its lines from Asheville to Marshall and from Asheville to Knoxville. The Asheville-Knoxville line runs through plaintiff's property, and the junction of the two lines is a short distance to the south thereof. Trains from Knoxville customarily stop at the junction and put out lighted fusees before entering the railroad yards as signals to operators of other trains. Some fusees put out prior to the fire complained of had started small fires on defendant's right of way which had not spread to adjacent property. The remains of used fusees were scattered along defendant's tracks where lighted fusees were customarily placed. Some had not burned.

On 6 November 1952, one Hagan, plaintiff's caretaker, was notified between 7:00 and 9:00 a.m. there was a fire on the property. After trying to get help and telephoning to the Asheville Fire Department and the forester, which consumed about one-half hour, he went down to the railroad where he found a freshly burned fusee about three feet from the railroad track. "The fire was still burning close around the fusee when I arrived . . . The burned space widened out as it left from the fusee, it spread out from it leading away from it and there was still plenty of grass at different places around the track, but it spread away from the fusee and hit the hill." At that time the fire had "hit the hill" some distance away and "was going west up the hill." It was so far to the west it could not be controlled. "The biggest part . . . was going west . . . pretty

far up the hill." "It was just a huge fire, went halfway to the tops and burned them almost up. The flames went 40 feet from the ground in some sections . . ." It had burned over about one-half acre when Hagan reached the scene. "When I got there, it was bounding up pretty high . . . It widened from the tracks."

When Hagan arrived fire was burning "pretty close" to the fusee, and some was "a pretty good distance" up the hill. The burned area at the fusee was not very wide. The fire was still burning and there was "a lot of dead grass all the way to the tracks." "It was burning two ways. It was burning like it was going across the hollow to the right . . . and spreading up the hill."

Plaintiff offered evidence tending to show there was "plenty" of high, dead grass, weeds, bushes, and other combustible matter on defendant's right of way. The grass and brush that had not burned was "growed all the way to the chat at the end of the track . . ." ". . . it was grown up into the chat, 6 to 12 inches high. It was very thick."

Plaintiff likewise offered evidence tending to show that employees of defendant put fusees out near the burned area and tendered testimony tending to show that it was customary for trainmen to put out a fusee whenever a train stopped there.

At the conclusion of plaintiff's evidence in chief, the court, on motion of defendant, entered judgment of involuntary nonsuit and plaintiff appealed.

*Williams & Williams for plaintiff appellant.*
*W. T. Joyner and Ward & Bennett for defendant appellee.*

BARNHILL, J. In view of plaintiff's evidence tending to show that the fire had burned over a half acre of plaintiff's land when her caretaker arrived, "and was bounding up pretty high," and yet it had not burned through the three feet of thick, high grass and weeds between the freshly burned fusee and the "chat" at the end of the railroad crossties, and the burned area was very narrow at the fusee, the defendant contends the evidence will not support the conclusion the fire originated at the freshly burned fusee; that there was evidence that fusees which had not burned were found along the track and the freshly burned fusee found by Hagan was one of these, burned by the fire which spread from the hill, where it originated, to the railroad right of way.

We may concede there is considerable force in this argument. Yet we need not rest decision on this testimony, for there is a fatal defect in plaintiff's evidence in another respect. There is no evidence tending to show that any employee of defendant put out a fusee within the burned area on defendant's right of way at or near the time the fire was discov-

ered. Nor is there any evidence a train of defendant stopped at or near the burned area on the right of way at any time on the morning prior to the fire.

Proof that a train stopped at the scene just prior to the fire coupled with the testimony tending to show that trains customarily stopped there and put out fusees as a warning to the crews of other trains before proceeding into the railroad yards might—as in case of a train discharging live sparks onto a foul right of way—make out a *prima facie* case for plaintiff. This we need not now decide. Certainly in the absence of such proof, the plaintiff has failed to make out a case for the jury. *Kerner v. R. R.,* 170 N.C. 94, 86 S.E. 998; *Ice Co. v. R. R.,* 126 N.C. 797.

"The burden rested upon the plaintiff to establish by competent evidence two facts alleged in her complaint: first, that the defendant negligently permitted combustible matter to accumulate on its right of way, and, second, that the defendant communicated fire from its engine to its foul right of way, which fire was thence communicated to the lands of the plaintiff." *Maguire v. R. R.,* 154 N.C. 384, 70 S.E. 737. It is not sufficient for the plaintiff to prove that the fire might have started from a fusee thrown out by an employee of defendant, starting a fire on a foul right of way which spread to her land; she must show these facts by reasonable affirmative evidence. *Wilson v. Lumber Co.,* 194 N.C. 374, 139 S.E. 760; *McBee v. R. R.,* 171 N.C. 111, 87 S.E. 985; 22 A.J. 653; Anno. 42 A.L.R. 795 (N. C. cases p. 796); *ibid.,* pp. 799, 820.

How was the fire started and by whom? Where did it originate? These are questions raised by the pleadings and the testimony offered. The answers are left to speculation or surmise. *Moore v. R. R.,* 173 N.C. 311, 92 S.E. 1; *Fleming v. R. R.,* 236 N.C. 568, 73 S.E. 2d 544. For that reason the judgment entered must be

Affirmed.